OPINION OF THE COURT
George L. Jurow, J.
This child protective proceeding pursuant to article 10 of the Family Court Act presents yet another test of the increasingly familiar but important issue of what constitutes suffi *755 cient corroboration of the child victim’s out-of-court statements. The instant case appears to present a fact pattern that tests the more outer boundaries or limits of the corroboration standard.
This court holds that in a child sex abuse proceeding under article 10 of the Family Court Act, the corroboration requirement in Family Court Act § 1046 (a) (vi) is satisfied when a 17-year-old child’s out-of-court statements naming her father as the abuser are corroborated by proof of her numerous attempts to flee her family home, ultimately as an out-of-State "runaway”, subsequent to the acts of abuse.
The respondent father is charged with sexually abusing the child, Joanne. The petition alleges that the respondent father, Gary P., had abused the child (then 13 years old) in that after asking her to get into his bed, he lay on top of her and fondled and touched her all over her body including her breasts and vaginal area. The alleged acts occurred on several different occasions in the family home in Massachusetts. The respondent mother, Voule P., is charged with neglect in that, after having been made aware of respondent father’s actions by the child, she took no action to protect Joanne or to insure that further incidents of sexual abuse would not reoccur. The respondents chose not to appear in court after having been duly served. A fact-finding hearing was completed, on inquest, pursuant to article 10 of the Family Court Act.
The basic facts as determined at trial are as follows: On March 16, 1988 the Department of Social Services (DSS) received a report from Covenant House, a facility that temporarily houses juveniles in distress, stating they had a runaway[1] who was the victim of child abuse. The child was then placed at the Salvation Army and subsequently interviewed by a caseworker from the Department of Social Services. The caseworker testified that Joanne stated that her mother and brother had gone to Greece during the summer of 1985. She and her sister remained home with her father. For the two weeks that her mother was away, her father insisted that she and her sister sleep with him. Each night he would lay on top *756 of her, pinning her down. He would then caress her entire body including her breasts and vaginal area while saying "you know you like it”. Joanne told her mother of her father’s behavior upon her return, but her mother took no action. Joanne said that she then no longer felt comfortable living at home, and began running away. It was undisputed that the child had run away from home 13 times while still living in Massachusetts. She finally left the State of Massachusetts and came to New York City in February of 1988. A social worker from the Salvation Army also testified; Joanne’s statements to her were entirely consistent with her prior statements to the DSS caseworker. .
Family Court Act § 1046 (a) (vi) provides in part that "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect.” A related provision in Family Court Act § 1012 (e) (iii) provides that the strict corroboration requirements of the Penal Law relating to sex offenses do not apply to child protective proceedings.
In order to clarify the nature of the corroboration standard and make clear that a flexible standard of corroboration was appropriate in article 10 proceedings, the New York State Legislature in its 1985-1986 session added the following language to Family Court Act § 1046 (a) (vi): "Any other evidence tending to support the reliability of the [child’s] previous statements * * * shall be sufficient corroboration. The testimony of the child shall not be necessary to make a fact-finding of abuse or neglect” (L 1985, ch 724, § 1). In elaborating upon this amendment the First Department has stated: "[D]ue process requirements are met by permitting a finding of abuse to be made on the basis of a child’s out-of-court statement which is corroborated by any competent, nonhearsay, relevant evidence, which confirms that the child has been sexually abused and enhances the credibility of the child’s statement as to its material elements. Whether or not sufficient corroboration exists is a determination to be made on a case-by-case basis.” (Matter of Nicole V., 123 AD2d 97, 105, affd 71 NY2d 112.)[2]
*757 In recent years a body of case law has emerged concerning what constitutes sufficient corroboration under the above-defined standard. Illustrative of this line of precedents are the following, all finding the type of evidence so indicated to be sufficient corroboration. Expert witness “validation” testimony (Matter of Nicole V., supra; Matter of Linda K., 132 AD2d 149; Matter of E. M., 137 Misc 2d 197), physical injuries or medical conditions (Matter of Nicole V., 71 NY2d 112, 122 [vaginal rashes, blood in vaginal area, no hymen, and depression and sleep disturbances]; Matter of Joli M., 131 Misc 2d 1088 [pregnancy]; Matter of Tara H., 129 Misc 2d 508, 512-513 [gonorrhea]), sexual abuse of an older child combined with the father’s admissions (Matter of Cindy JJ., 105 AD2d 189, 191), and child’s in camera interview (Matter of Tina H., 123 AD2d 864; Matter of Tantalyn TT., 115 AD2d 799, 801).
Applying the standards enumerated above to the fact pattern in the subject case, it is true that none of the customary categories of evidence held to constitute sufficient corroboration — medical evidence, validation testimony, parental admissions, or the like — was presented at trial. However, the court does find that the petitioner did present evidence that, as a matter of law, can be considered by the court to constitute sufficient corroboration, namely, evidence that Joanne, who at the time of the incident was residing with her family in Massachusetts, subsequent to the acts of sexual abuse not only ran away from home numerous times in Massachusetts, but eventually came to New York City in an attempt to flee the household. The behavioral action of the child in running away from her family and in effect placing herself in the category of an out-of-State runaway constitutes sufficient corroboration for her out-of-court statements. The court can and does draw the reasonable inference and reach the conclusion that the child’s action of coming to New York and becoming a participant in the array of social services provided by New York City agencies to runaway youths may well have been motivated by *758 her understandable difficulty in dealing with the acts of sexual abuse that occurred and were apparently condoned within the family.
Runaways, of course, may flee their homes for a variety of possible reasons, abuse and neglect constituting only one possible causal category (delinquency would be an obviously other significant category). To constitute corroboration, runaway status need not be the sole causal connection to alleged abuse or neglect, but rather it is sufficient that abuse or neglect constitute one of several reasonable possible causes of the behavioral (runaway) outcome. In this sense, the child’s runaway status, and in particular the more extreme status of an out-of-State runaway, meets the corroborative definition of evidence that "enhances the credibility of the child’s statement as to its material elements” (Matter of Nicole V., supra, 123 AD2d, at 105). Significantly, the Interstate Compact on Juveniles (cited supra, at n 1) explicitly recognizes the categories of "delinquent, neglected or dependent” (McKinney’s Uncons Laws of NY § 1801, art IV [a] [L 1955, ch 155]; emphasis added) as possible predicate conditions existing in the runaway’s originating home State.[3]
In determining whether the petitioner has met its over-all burden of proof in this article 10 proceeding, by a preponderance of the evidence, the court will note that the respondents defaulted in the proceeding, although properly served. Where a party in a civil case has knowledge of the facts material to the case, and inexcusably fails to offer any testimony refuting the evidence against him, " 'every inference warranted by the evidence will be indulged in against him.’ ” (Fingerhut v Kralyn Enters., 71 Misc 2d 846, 860, affd 40 AD2d 595; Matter of Association of Bar v Randel, 158 NY 216.) The court may properly infer that had the respondents testified he or she would not have contradicted the proof offered by the petitioner as to the identity or acts. (Cf., Matter of Commissioner of Social Servs. [Patricia A.] v Philip De G., 59 NY2d 137, 141; see, Richardson, Evidence § 92 [Prince 10th ed 1973].)
*759 Even were the court to have disregarded the fact of respondents’ nonappearance, and draw no inferences therefrom, the court still would find that petitioner has established its case by a preponderance of the credible evidence. In so finding, the court points to factors that make it highly probable that the respondent father committed the alleged acts of sexual abuse: the child’s statements were made on a consistent basis to different individuals at different times; the child was of a sufficient age and developmental level so as to be capable of making a reliable statement; the child specifically named both the act of abuse and the identity of the abuser; and the fact of the child’s numerous attempts to flee the respondents’ household greatly assisted the court in concluding that the child’s out-of-court statements were reliable.
Therefore, based on the totality of the credible evidence presented, the court finds by a preponderance of credible evidence that respondent Gary P. committed acts of sexual abuse with respect to the child Joanne P., specifically acts that would otherwise constitute violations of Penal Law § 130.65 (1) (sexual abuse in the first degree; forcible compulsion); § 130.60 (2) (sexual abuse in the second degree; less than 14 years old).
The court further finds neglect on the part of respondent Voule P. in that she failed to take any significant action to protect the child after having been apprised of what had occurred. By failing to take such action respondent in fact contributed to the child’s desire and need to leave the household and come to New York as a runaway child.
Upon stipulation of the petitioner and the Law Guardian, and based upon sufficient available background information concerning Joanne P.’s needs and circumstances, the child is placed with the Commissioner of Social Services for a period of up to 12 months with the ongoing services to be continued so long as the child requires them.

. The court will note that since Joanne P. was a runaway child the court directed the petitioner to determine whether any request had been made pursuant to the Interstate Compact on Juveniles (McKinney’s Uncons Laws of NY § 1801, art IV ["Return of Runaways”] [L 1955, ch 155]) for the return of the child. After the court was satisfied that no such request had been made, which would have mandated the return of the child to Massachusetts, the court allowed the case to proceed to trial.

. The policy reasons behind a flexible and broadly defined standard of corroboration are obvious. The primary purpose of article 10 proceedings is to protect endangered children. This liberalized standard was designed to avoid the necessity of the child having to testify in court as to the abuse due *757 to the obvious trauma that often accompanies such testimony. In cases of child sexual abuse, eyewitness testimony or physical evidence is often lacking: as also noted by the First Department, "[T]he only really meaningful evidence of abuse may be the out-of-court statements of the victim. Requiring strict corroboration, given the difficulty of proof in these cases, would utterly defeat the purpose of article 10 proceedings, which purpose can only be achieved by tipping the balance between the rights of children and of their parents in favor of protecting the children.” (Matter of Nicole V., 123 AD2d 97,104.)

. Although dehors the record, it is interesting to note that one of the more thorough studies concerning the nature of runaways, conducted by two members of the faculty of the Columbia University College of Physicians and Surgeons, found that of 118 children entering runaway and homeless youth shelters in New York City, 50% of the youngsters listed repeated or severe physical and/or sexual abuse as their primary reason for leaving home. (Shaffer and Caton, Runaway and Homeless Youth in New York City [Ittleson Foundation 1984].)