This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------

No. 152
The People &c.,
          Respondent,
        v.
Willie L. Wragg,
          Appellant.




          Shirley A. Gorman, for appellant.
          Geoffrey Kaeuper, for respondent.




RIVERA, J.:


          Defendant Willie L. Wragg seeks reversal of his
conviction of sexual abuse in the first degree on the ground that
he was denied meaningful representation due to his attorney's
alleged deficient performance.  In the alternative, defendant

- 1 -

contends he should be resentenced because the trial court improperly treated him as a second child sexual assault felony offender, even though the People failed to file a predicate offender statement prior to the commencement of trial, as provided for under CPLR 400.19 (2).  We find both grounds without merit, and therefore affirm the Appellate Division.

Defendant was charged with one count of sexual abuse in the first degree for touching the vaginal area of a minor (Penal Law § 130.65 [3]).  At defendant's January 2009 jury trial, the victim, nine-year old MH, testified that on June 22, 2008 she was walking from her friend's house when a stranger "came out of nowhere" and touched her "front private part" outside her clothing, with his hand.  In court she identified the assailant as the defendant.

According to the testimony of two police officers who interviewed MH the day of the incident, she described for them what happened and the assailant, including what he wore.  She then traveled with police to the site where she was assaulted, and although the police canvassed the neighborhood, at the time they did not come up with a suspect.  Approximately ten days later, a police investigator spoke with MH and again took a description from her.  He then spoke to a daycare provider who lived near MH's home, and based on his description, the provider identified defendant.  According to the investigator he met with MH again eight days later and she identified a suspect.  Five

days later the police arrested defendant.

Defendant presented a mistaken identify defense at trial. Counsel began to lay the groundwork for that defense during jury voir dire. While questioning prospective jurors about how counsel might establish that the child was mistaken, he asked whether they would be more or less likely to accept that the victim was honestly mistaken if she made an identification days after the initial assault. At one point, the following discussion was held.

> "DEFENSE COUNSEL: Perjury is lying under oath. Does somebody have to be lying to be mistaken?
>
> PROSPECTIVE JUROR 15: No.
>
> DEFENSE COUNSEL: There is a saying that honest people can be honestly mistaken and certain people can be certainly wrong. [Sir,] is it possible she just can be pointing at the wrong guy?
>
> PROSPECTIVE JUROR 14: She could, in fact.
>
> DEFENSE COUNSEL: Do you think you would be more likely to accept that if you learned she didn't identify Mr. Wragg until three days later."[1]

Then later, counsel directly asked how the child's mistake might influence the juror's determination of defendant's guilt.

---

[1] In fact, as noted during the prosecutor's voir dire questions, MH did not identify the defendant until three weeks after she was attacked.

"DEFENSE COUNSEL: But, if through the cross-examination of her you have a reasonable doubt as to accuracy of her identification, how would you vote?

PROSPECTIVE JUROR 13: She didn't actually think he did it?

DEFENSE COUNSEL: If you don't believe her, not just that you don't believe her, but you believe she could be mistaken, when she points to Willie, how would you vote?"

Counsel built on this theory of the case during cross-examination of the People's witnesses. Counsel first challenged MH, asking her questions suggesting her memory was flawed and that she had been coached. He then elicited testimony from the police who interviewed MH that she, in fact, did not provide a description on her own, but rather gave information in response to the officers' directed questions about the height and weight of the assailant. Counsel also affirmed through testimony from MH's friend that shortly after the incident she, MH, and others went to a house near where the incident occurred and MH identified someone in the house, not the defendant, as the assailant. This contradicted MH's direct testimony that she did not identify the man in the house as the person who touched her.

Defendant also presented testimony from witnesses regarding his whereabouts around the time of the incident. His wife and one of her coworkers testified that they left work together midafternoon, picked up defendant and together

went to two local stores.  Along the way defendant purchased
lottery tickets.  Defendant sought to support this testimony
by admitting into evidence lottery tickets time stamped at
5:20 pm.  These witnesses further testified that defendant
and his wife returned home at 5:20, and his wife further
claimed that they remained inside their home the rest of the
evening.

Theprosecutor attacked the credibility of these
witnesses on cross-examination.  First, she confronted
defendant's wife with a copy of her coworker's timecard,
which indicated that the coworker left more than an hour
later than the witnesses had originally claimed.  Second,
the coworker claimed she did not remember exactly when she
left, but acknowledged the hour indicated on the time stamp.

Defendant also presented testimony from a neighbor
and self-described good friend and mother of his godchild,
who stated that on the day of the incident he came to her
home at 5:00 am, and left several times throughout the day
because he was cooking dinner.  She too testified that he
left with his wife and the coworker in the afternoon, and
that she saw them return home later that evening.  The
prosecutor challenged the veracity of the witness by
eliciting testimony suggesting that her memory of the day of
the incident was uncannily certain, compared to her memory
of other days and times that same week, and that she had

been arrested for petit larceny.

During summation, the prosecutor, as relevant here, used sympathetic terms to describe MH; referenced getting "justice for what happened to her"; told the jury that "[MH's] testimony standing alone is enough to convict Willie Wragg" and that there was no "no reason not to believe [her]"; used the terms "bogus," "bologna," and "poppycock" when describing the theory of the defense; that she "loved" certain witnesses as well as had a "favorite part" of a defense witness's testimony; and explained that while she had previously told MH that "[they] were going to be called the jury...that is a far cry from coaching." Defense counsel, for his part, argued on summation that this was a case of mistaken identity, which turned on MH's sole eyewitness, split-second view of the assailant. He reminded the jury that there was testimony that MH initially identified someone else as the assailant. He contended that MH's memory was weak, and that even if she did not lie, she was coached. He further suggested that the police testimony about the time of the incident was suspiciously similar, and that they had some motive in the case to make their testimony fit the facts. He also highlighted that no physical evidence established defendant's guilt.

After deliberating approximately two hours, the jury returned a guilty verdict on the sole count. On the

initial day of sentencing, the court stated on the record that defendant should be treated as a second child sexual assault felony offender, and adjourned to allow the People time to prepare the predicate felony offender papers. Thereafter, over defense counsel's objection, the People filed the predicate offender statement, alleging defendant was previously convicted of first degree rape for engaging in sexual intercourse with an eleven-year old female family member, and that he was 18 years or older at the time of the commission of the offense.  Following a hearing to establish the facts of the underlying predicate conviction, the court sentenced defendant as a second child sexual assault felony offender to a determinate term of 15 years with 5 years of post-release supervision, the maximum sentence allowed by law.

The Appellate Division affirmed (115 AD3d 1281 [4th Dept 2014]), and a Judge of this Court granted leave to appeal (23 NY3d 1070 [2014]).  We now affirm.

Defendant claims he was denied a fair trial due to alleged critical mistakes by his trial counsel.  These include counsel's revelation to prospective jurors about MH's inadmissible, prior out-of-court identification of defendant; his failure to object to improper bolstering by police regarding this identification; and his failure to respond or object to multiple instances of prosecutorial

misconduct.  The People respond that defendant's claims amount to no more than dissatisfaction with counsel's legitimate -- albeit unsuccessful -- trial tactics, and that counsel cannot be faulted for failing to object to alleged prosecutorial impropriety that was neither egregious nor prejudicial.  We find defendant's arguments unpersuasive, and conclude that he has failed to point to the type of missteps by defense counsel that establish a performance so lacking in competence and strategic purpose that it fails to meet the constitutional minimum standard of professionalism recognized by this Court.

In determining whether counsel provided effective assistance, "[t]he core of the inquiry is whether defendant received meaningful representation" (People v Benevento, 91 NY2d 708, 712 [1998]).  In making that assessment, the court must view counsel's performance in its totality (see People v Baldi, 54 NY2d 137, 147 [1981]).  Defendant, of course, bears the burden of establishing his claim that counsel's performance is constitutionally deficient (People v Barboni, 21 NY3d 393, 406 [2013]).  Thus, defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's alleged failure (People v Satterfield, 66 NY2d 796, 799-800 [1985].  However, a reviewing court must be careful not to "second-guess" counsel, or assess counsel's performance "with the clarity of hindsight," effectively

substituting its own judgment of the best approach to a given case (Benevento, 91 NY2d at 712; see also Satterfield, 66 NY2d at 799-800 ["It is not for this court to second-guess whether a course chosen by defendant's counsel was the best trial strategy, or even a good one, so long as defendant was afforded meaningful representation"]).

Defendant argues that where the sole defense was the child's misidentification there is no tactical advantage to revealing that MH in fact recognized defendant before trial, or in permitting the prosecutor, in turn, and without objection, to remind the jury that MH previously identified defendant as the assailant. We disagree.

As the record establishes, during the voir dire counsel asked questions to elicit whether prospective jurors were open to the possibility that the child made an honest mistake about who touched her. This was a critical line of inquiry because the prospective jurors initially appeared hesitant to accept that a child would lie about being sexually assaulted, but appeared open to the suggestion that MH could have innocently identified the wrong person as her assailant. By using the information to question prospective jurors about their reactions to the child's identification of defendant some time after the assault rather than on the same day, a fact repeated by the prosecutor without objection, counsel sought to ensure selection of jurors

receptive to his mistaken identification defense and his arguments about the existence of reasonable doubt of defendant's guilt based on the child's error. Given that the defense hinged on the jurors' belief that the child was mistaken about defendant, and that the prospective jurors were inclined to believe the child, sight unseen, we cannot say that counsel failed to employ a legitimate trial strategy by putting in question MH's identification at the earliest possible opportunity.

Defendant also claims that counsel was ineffective for failing to object when one of the investigators testified that MH gave him a description of the assailant. According to defendant, this testimony inferentially bolstered MH's in-court identification. However, as with counsel's questions to the prospective jurors, the investigator's testimony that MH identified defendant almost three weeks after the assault, supported counsel's argument that MH made an honest, even understandable, mistake given the lapse of time (see People v Brown, 17 NY3d 742, 744 [2011] [no error where counsel failed to object to remarks by prosecutor impugning defendant because they were consistent with counsel's theory of the case]). Moreover, the tactic benefitted from testimony by MH's friend that MH identified someone other than the defendant within a short span of time after the incident. That the strategy

ultimately failed does not make counsel's representation ineffective (see People v Benn, 68 NY2d 941, 942 [1986] [ineffective assistance of counsel "requires proof of true ineffectiveness rather than mere disagreement with strategies and tactics that failed"]; see also People v Lester, 124 AD2d 1052, 1053 [4th Dept 1986][counsel engaged in a reasonable strategy to "cast doubt upon the reliability of the eyewitnesses' in-court identification" by "attempt[ing] to show that the in-court identification was influenced by an impermissibly suggestive photo array and lineup"]).

Defendant's other complaint that counsel was ineffective for failing to object to a pattern of prosecutorial misconduct is similarly without merit. First, we note that this is not a case where defense counsel remained silent while the prosecutor exceeded the limits of acceptable argument. Counsel lodged several objections, which the court sustained. Second, while the People concede that some of the prosecutor's summation remarks were inappropriate, they correctly argue that the remarks were not so egregious that counsel's failure to object renders his overall representation constitutionally defective. Here, the prosecutor used terms of endearment for the child and argued that the jury should believe the child's testimony that she was molested. Those comments, focused as

they were on the attack rather than on the propriety of the child's identification of defendant, did not detract from the theory of the defense that days and weeks after the event the child made the honest mistake of picking the wrong person as her attacker.

To the extent defendant complains about the prosecutor's other remarks, we cannot say on this record that counsel's failure to object exposed the jury to the type of prosecutorial abuse this Court has previously held to warrant reversal of the conviction. For example, the remarks are not similar to the prosecutor's statements in People v Wright (25 NY3d 769 [2015]), People v Fisher (18 NY3d 964 [2012]), or People v Ashwal (39 NY2d 105 [1976]). In those cases the prosecutor, during summation, exceeded the bounds of proper conduct by making misleading representations about physical evidence, encouraging inferences of guilt based on facts not in evidence, and improperly conveying guilt in uncharged crimes (see Wright, 25 NY3d at 780-81 [prosecutor incorrectly stated in her summation that defendant had left DNA evidence at the crime scene, when a DNA analysis indicated there was no match]; Fisher, 18 NY3d at 966-67 [prosecutor's summation was improper where she relied on facts not in evidence, her "less then frank" statement that a witness was not receiving a benefit for testifying, and an admonishment to

jury that "their acceptance of the testimony of the child witnesses was essential to the administration of justice"]; Ashwal, 39 NY2d at 110 [prosecutor improperly conveyed the impression that defendant had killed informant to prevent him from testifying in defendant's current trial for drug possession]). Here, the prosecutor's summation rhetoric does not equate, as in the cases above, to the type of conduct that we have previously held denied the defendant a fair trial.

Defendant further contends that counsel was ineffective for failing to object when at various points the prosecutor injected her credibility into the trial, essentially serving as an unsworn witness for the People. However, the record fails to support this characterization of the prosecutor's conduct and defendant's other complaints about the prosecutor's trial conduct are similarly unpersuasive.

Defendant's final claim concerning counsel's use of the alibi witnesses and his cross-examination of MH is groundless. First, counsel cannot be held ineffective because the People impeached the albi witnesses when they were caught in a lie (see People v Rose, 57 NY2d 837, 839 [1982]["Defense counsel's reliance on the testimony of a witness whose credibility was subsequently impeached on cross-examination may have been an inadvisable trial tactic,

but it did not constitute ineffective assistance"]).
Second, defense counsel did not err by attempting to impeach
the complainant and sole eyewitness by pointing to
discrepancies between her trial and grand jury testimonies,
even if counsel was unsuccessful in his efforts to do so
(see Benevento, 91 NY2d at 712-13 ["As long as the defense
reflects a reasonable and legitimate strategy under the
circumstances and evidence presented, even if unsuccessful,
it will not fall to the level of ineffective assistance"]).

Viewing counsel's representation in its totality,
defendant received effective assistance of counsel under our
state standard (see Baldi, 54 NY2d at 147). Since "our
state standard ...offers greater protection than the federal
test, we necessarily reject defendant's federal
constitutional challenge by determining that he was not
denied meaningful representation under the State
Constitution" (People v Caban, 5 NY3d 143, 156 [2005]).

Turning to defendant's alternative request for
relief, defendant argues that if his conviction stands, he
should be resentenced because the People failed to file a
predicate felony conviction statement prior to the
commencement of trial, as provided in CPL 400.19 (2). On
this appeal, defendant does not dispute that he has a
predicate felony conviction for a sexual assault against a
child based on his January 2000, first degree rape

conviction.  As such, this conviction makes him subject to sentencing enhancement under Penal Law § 70.07.  Nor does he contend that the court imposed an incarcetory period outside the statutory sentencing range for his current conviction.  Instead, he claims that the People exercised their discretion to avoid an enhanced sentence in his case.  However, this argument relies on a misinterpretation of the applicable statutes, and is no basis to mandate that defendant be resentenced.

Penal Law § 70.07(1) provides that "[a] person who stands convicted of a felony offense for a sexual assault against a child, having been subjected to a predicate felony conviction for a sexual assault against a child, must be sentenced in accordance with" a statutorily specified enhanced sentencing range.  The governing procedures for determining whether a defendant is subject to a predicate felony conviction for purposes of Penal Law § 70.07 are specified in CPL 400.19 (see Penal Law § 70.07[3]).[2] Pursuant to CPL 400.19 (2),

> "[w]hen information available to the people
> prior to the trial of a felony offense for a
> sexual assault against a child indicates that

---

[2] We have no occasion to consider the CPL 400.19 procedures as they apply to the statutorily required determination of whether an offender was eighteen years or older at the time of the commission of the predicate offense because defendant's age, as it relates to the prior felony, is not at issue on this appeal.

> the defendant may have previously been
> subjected to a predicate felony conviction
> for a sexual assault against a child, a
> statement may be filed by the prosecutor at
> any time before trial commences..."

(CPL 400.19[2]).

The defendant must be given a copy of the statement and an opportunity to controvert allegations contained therein (CPL 400.19 [3]).  Any allegations not controverted "shall be deemed to have been admitted by the defendant" (id.).  Where the defendant controverts an allegation, the statute requires the court hold a hearing and make a finding as to whether the defendant has been subjected to a predicate felony conviction within the meaning of Penal Law § 70.07 (see CPL 400.19 [6]).  These procedures ensure that a defendant has appropriate notice and opportunity to challenge allegations of the existence of a sentence-enhancing predicate conviction (cf. People v Bouyea, 64 NY2d 1140, 1142 [1985] [the statutory purpose for filing a predicate statement in second felony offender cases, which contain procedures under CPL 400.21 that are sufficiently similar to the notice and hearing requirements in CPL 400.19, includes "providing defendant with reasonable notice and an opportunity to be heard"]).

It is apparent from the statutory text that convicted second child sexual assault felony offenders must be sentenced under Penal Law § 70.07.  Nevertheless,

defendant contends that because CPL 400.19 (2) states the People's predicate "statement *may* be filed by the prosecutor at anytime before trial commences" the legislature intended to give the People discretion to avoid enhanced sentencing under Penal Law § 70.07 for this category of defendants. He argues that this interpretation of the statute follows logically, given that all the other predicate sentencing statutes, except for those applicable to persistent child sexual offenders, mandate enhanced sentences, and the CPL sections setting forth the corresponding procedures for determining predicate convictions under those statutes require that the prosecutor *must* file the statement before sentencing (see CPL 400.15 ["Procedure for Determining Whether Defendant is a Second Violent Felony Offender"]; CPL 400.16 ["Procedure for Determining Whether Defendant is a Persistent Violent Felony Offender"]; CPL 400.21 ["Procedure for Determining Whether Defendant is a Second Felony Offender or a Second Felony Drug Offender"]). According to defendant, the legislative choice to use "may" in CPL 400.19 was intended to give prosecutors discretion to seek enhanced sentencing only when the prosecutor exercised this discretion prior to trial.

This interpretation ignores the text of Penal Law § 70.07 which contains no limiting language in its sentencing provisions. The explicit language in section one

states that a person convicted of a felony offense for sexual assault against a child, who has a predicate felony conviction for child sexual assault, "must be sentenced" in accordance with Penal Law § 70.07 sentencing provisions. The applicable time for invoking the procedures contained in CPL 400.19 does not change the import of the mandatory language in Penal Law § 70.07, which subjects this category of offenders to legislatively promulgated enhanced sentences. Furthermore, the specific language in CPL 400.19 (2) upon which defendant relies merely permits filing of the statement before commencement of a trial. It does not prohibit filing afterwards, and before sentencing. As courts have concluded, "may" does not mean "must" (see People v Armbruster, 32 AD3d 1348 [4th Dept 2006]; People v Spruill, NYLJ 2/15/02, vol 227, No. 31 [Crim Ct, New York County]). Notwithstanding defendant's requests that we read the statute otherwise, this Court is without authority to read mandatory language into a statute where it is otherwise absent (Statutes Law § 94 [McKinney]; Lederer v Wise Shoe Co., 276 NY 459, 465 [1938] ["We do not by implication read into a clause of a rule or statute a limitation for which we find no sound reason and which would render the clause futile."]).

        We further note that because Penal Law § 70.07, on its face, applies to persons once convicted of a felony

offense for a sexual assault against a child, CPL 400.19 (2) provides a mechanism for filing the statement before conviction.  By allowing for filing at a time when any challenges to the underlying predicate offense can be resolved by the court before trial, this provision serves the additional purpose of facilitating plea negotiation by confirming defendant's sentencing exposure should he be convicted.  Furthermore, and as a consequence, this provision, similar to other statutes, has the added benefit of potentially sparing child victims the stress of reliving the sexual assault by the retelling of the events in a courtroom (see generally Matter of Joanne P., 144 Misc 2d 754, 756 n2 [Fam Ct 1989] [explaining that Article 10 proceedings were "designed to avoid the necessity of the child having to testify in court as to abuse due to the obvious trauma that often accompanies such testimony"]).

This interpretation of Penal Law § 70.07 and CPL 400.19 is fully supported by the legislative history which establishes that the enhanced sentencing laws were intended to increase penalties against sex offenders to better protect the public, and to address recidivism (see New York Bill Jacket 2000 823b Chp 1 pg. 4 [to "[e]nact[] a provision for repeat child molesters who commit particularly serious sexual assaults against children and requires that they receive enhanced penalties, including mandatory

sentences"]).  Defendant's interpretation, however, would mandate enhanced sentencing for every sex offender except those whose victims are children.  Certainly the legislature, concerned with public safety and punishment of repeat offenders, would not grant discretion to prosecutors to avoid higher sentences for perpetrators of sex crimes against a particularly vulnerable class of victims.

Accordingly, the order of the Appellate Division should be affirmed.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order affirmed.  Opinion by Judge Rivera.  Chief Judge Lippman and Judges Pigott, Abdus-Salaam and Stein concur. Judge Fahey took no part.

Decided November 19, 2015