556

[69 NE3d 604, 46 NYS3d 817]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PRINCE CLARK, Appellant.

Argued November 16, 2016; decided December 20, 2016

**POINTS OF COUNSEL**

*Lynn W.L. Fahey, Appellate Advocates*, New York City (*De Nice Powell* of counsel), for appellant.

558

*Eric Gonzalez, Acting District Attorney*, Brooklyn (*Sholom J. Twersky* and *Leonard Joblove* of counsel), for respondent.

**OPINION OF THE COURT**

RIVERA, J.

On defendant Prince Clark's appeal challenging his convic-

tion of murder in the second degree (Penal Law § 125.25 [1]) and assault in the second degree (Penal Law § 120.05 [2]), only defendant's claim of ineffective assistance of counsel is properly before us. With respect to that challenge, we conclude defendant was not denied a fair trial when his attorney pursued a defense of misidentification in accordance with defendant's assertion of innocence on all charges.

Defendant was convicted upon a jury verdict for the murder of Jamel Wisdom and assault with a deadly weapon of Gamard Talleyrand. According to the trial evidence, defendant was with his friend KM and his cousin and codefendant Michael Morrison, when Wisdom, Talleyrand, and several other men confronted defendant on the street, calling him names, and pushing and kicking him. During the attack KM heard defendant call out that someone had a knife and "they are going to cut me." However, KM did not see a knife and no knife was ever recovered from the scene. After several minutes, defendant, followed by his attackers, headed towards his apartment building, located a short distance away.

The People admitted into evidence surveillance video of defendant's building from the time of the attack as proof of defendant's criminal liability. Talleyrand, despite knowing defendant, testified that he was unable to identify defendant in the video, but KM identified herself, Morrison, and defendant. The People argued, based in part on KM's testimony, that defendant was the man depicted in the video, which captured the shooting of the victim in the lobby of defendant's building. Accordingly, we refer to this man as defendant, acknowledging that defendant maintained at trial that he is not the person in the video.

The surveillance video depicts Morrison and defendant entering the building, walking up the stairs, and then returning to the lobby and exiting together a few minutes later. The two men can then be seen in front of the building where Morrison passes something to defendant, which the People maintained was a gun. Defendant then walked towards the group that had previously attacked him, exiting the camera frame. KM testified that she then heard gunshots, but did not see the shooter since she turned and began running away. Talleyrand testified that he saw Wisdom fall down and turned to see a man, who he claimed he could not identify, with a gun. He ran and was shot twice in the leg.

Video of the lobby shows that after Talleyrand was shot, defendant reentered the building, pursued by two men, one of

whom was later identified as Wisdom. Once inside the building, Wisdom slammed defendant, who was holding a gun in his hand, up against the lobby wall. Defendant then momentarily freed himself and fired several close range shots at Wisdom. Defendant and Wisdom struggled for several seconds, during which they both fell to the floor. The man who had followed Wisdom into the building attacked defendant, but defendant eventually broke free and the two dispersed, leaving Wisdom motionless on the lobby floor. Police testified that approximately three weeks after the shooting, they apprehended defendant in Georgia.

The medical evidence established that Wisdom died as a result of six gunshot wounds. He was struck in the head, torso, and arm, and sustained an injury to his spinal cord. The People also admitted physical evidence of defendant's and Morrison's blood, along with Morrison's DNA, on a sweatshirt found on the roof of a nearby building, as well as shell casings recovered from the building lobby and the street where Talleyrand was shot.

Defendant was charged with Wisdom's murder, the attempted murder and assault of Talleyrand, and weapons possession. Codefendant Morrison was charged with assault, weapons possession, and criminal facilitation. Prior to jury selection, and without objection from defendant's counsel, the court ordered the public to wait outside to create space in the courtroom for the prospective jurors. Soon thereafter, but prior to jury selection, Morrison accepted a plea, and defendant proceeded to trial alone (see People v Morrison, 104 AD3d 959, 959 [2013], lv denied 21 NY3d 1007 [2013]).

During the People's case-in-chief, defense counsel informed the court that he believed the People's evidence supported an extreme emotional disturbance (EED) affirmative defense, and that he had informed defendant that he could not proceed with such defense without defendant's permission, to which defendant stated he "d[id] not wish to have [counsel] indicate in any manner, shape or form as far as justification or diminished capacity on the murder two." Rather, defendant steadfastly maintained he was not the individual depicted in the incriminating video. On the record, the court then addressed defendant concerning his decision not to pursue an EED or justification defense.

"THE COURT: Have you had an adequate opportunity to discuss these various legal issues and tactical decisions with your attorney?

"THE DEFENDANT: Yes.

"THE COURT: And we've indicated now in open court that at least to the justification or self defense claim or the extreme emotional disturbance, both of which in essence say I did it but there was some reason I did it; either I was justified in doing it or I did it because of an extreme emotional disturbance and, therefore, my -- says in essence I'm not guilty of murder, maybe guilty of manslaughter which carries -- doesn't carry a life term at the back of it as a murder conviction. Have you had a chance to discuss that?

"THE DEFENDANT: I did.

"THE COURT: And your attorney says that as a tactical decision which you're entitled to make, that you don't want to pursue those defenses in terms of justification and or extreme emotional disturbance, is that correct?

"THE DEFENDANT: That is correct. . . .

"THE COURT: You doing so voluntarily in full recognition of the potential consequences?

"THE DEFENDANT: I am not making any decision -- I'm not making any decision referring to you reducing it to any manslaughter or anything like that cause this is not me."

Counsel proceeded with a misidentification defense, in accordance with defendant's claim of innocence. Further, counsel did not request, and the court did not charge, justification to the jury.

After the case was submitted, on the second day of deliberations, the jury sent a note inquiring: "[h]ow does the law differentiate 'intent to kill' from 'intent to harm'?" and, "with respect to Mr. Wisdom[,] if he initiated the struggle and [defendant] was acting defensively, does that negate 'intent to kill'?" The Judge informed counsel and the prosecutor that he would instruct the jurors that justification and self-defense were not issues before them. Counsel urged the court to limit its instruction to whether defendant's actions were intentional,

and specifically objected to the court making "any reference to self defense" or "advising the jury that that issue was not before them and they're not to rule on it." The court responded to the note by informing the jurors that they had not been instructed on justification or self-defense, and so they were to focus on whether the People had proved beyond a reasonable doubt that defendant intended to cause Wisdom's death.

The jury subsequently returned a guilty verdict on the second-degree murder, second-degree assault, and weapons possession counts, and acquitted defendant of the attempted murder of Talleyrand.[1] Defendant appealed.

The Appellate Division affirmed in a split decision, concluding, as relevant here, that counsel was not ineffective either for failing to advance a justification defense that would have been inconsistent with defendant's chosen theory of misidentification, or for failing to object to the courtroom closure given the prevailing law at the time (129 AD3d 1 [2d Dept 2015]). The dissent argued that issues of fact existed as to whether defendant acted in self-defense, that the court had an obligation to charge the jury with a justification defense (an issue it would have reached in the interest of justice), and that counsel was ineffective for failing to "exercise his own professional judgment as to matters of trial tactics and strategy throughout the course of the trial" (*id.* at 45 [Miller, J., dissenting]). A dissenting Justice granted defendant leave to appeal (25 NY3d 1174 [2015]).

Defendant now reasserts his claim that counsel was ineffective for pursuing a misidentification defense at defendant's behest, rather than offering the inconsistent defense of justification, and because counsel failed to protect defendant's right to a public trial. Under the circumstances of this case, we find defendant's arguments unpersuasive.

The standards for assessing a defendant's ineffective assistance of counsel claim are well settled. Under our State Constitution a defendant must establish that counsel failed to provide meaningful representation and thus deprived defendant of a fair trial (*see People v Hobot*, 84 NY2d 1021, 1022 [1995]). "In making that assessment, the court must view counsel's performance in its totality" (*People v Wragg*, 26 NY3d

---

1. At sentencing, the court dismissed the weapons possession count because it was erroneously listed on the verdict sheet as third-degree criminal possession of a weapon.

403, 409 [2015], citing *People v Baldi*, 54 NY2d 137, 147 [1981]). "Counsel's performance should be objectively evaluated to determine whether it was consistent with strategic decisions of a reasonably competent attorney" (*People v Benevento*, 91 NY2d 708, 712 [1998] [internal quotation marks and citation omitted]). Defendant bears the ultimate burden of showing "counsel's performance is constitutionally deficient" (*Wragg*, 26 NY3d at 409), as well as "the absence of strategic or other legitimate explanations" for counsel's challenged actions (*People v Rivera*, 71 NY2d 705, 709 [1988]).

To satisfy the two-part federal test for ineffectiveness set forth in *Strickland v Washington*, a defendant must show "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms" (466 US 668, 688 [1984]), and also "that the deficiency in performance prejudiced defendant" (*Benevento*, 91 NY2d at 713, citing *People v Ford*, 86 NY2d 397, 405 [1995]). "*Strickland*'s prejudice prong is what chiefly separates it from" our state standard (*People v Stultz*, 2 NY3d 277, 283 [2004]). As this Court has ofttimes explained, "defendant need not fully satisfy the prejudice test of *Strickland*" as "[o]ur focus is on the fairness of the proceedings as a whole" (*id.* at 284).

The right to effective assistance includes defendant's right to counsel's beneficial exercise of professional skill and judgment as defendant's advocate (*Powell v Alabama*, 287 US 45, 68-69 [1932]; *see Strickland*, 466 US at 688). Counsel's role is to advise, manage the trial, and make tactical and strategic decisions related to the defense (*see People v Colon*, 90 NY2d 824, 826 [1997]; *People v Ellis*, 81 NY2d 854, 856-857 [1993]). However, defendant retains authority over such fundamental decisions as "whether to plead guilty, waive a jury trial, testify in [defendant's] own behalf or take an appeal" (*Colon*, 90 NY2d at 825-826 [citations omitted]). This allocation of authority reflects the nature of the attorney-client relationship, in which defendant seeks out and relies on counsel's professional judgment, and counsel, in turn, makes tactical decisions after weighing the relevant considerations and upon consultation with defendant (*see Florida v Nixon*, 543 US 175, 187 [2004]; *People v Colville*, 20 NY3d 20, 32 [2012]; ABA Standards for Criminal Justice, Defense Function, standard 4-5.2 [c] [4th ed 2015]).

Here, we cannot say that defendant received less than meaningful representation (*Baldi*, 54 NY2d at 147). Defendant

concedes that he instructed counsel to pursue a misidentification defense, and he does not claim that counsel's professional efforts in that regard were constitutionally deficient. Rather, defendant claims he was deprived of effective assistance when counsel failed to present a defense of justification. We disagree.

■ Each defense theory available to defendant posed its own challenges, and the choice of one, instead of the other, was not "determinative of the verdict" (*People v Petrovich*, 87 NY2d 961, 963 [1996]). We are not presented with a case in which defendant's chosen defense theory was self-destructive and ensured conviction. Nor did the path taken by counsel undermine his ability to deploy professional skill and expertise in presenting the chosen defense. For the same reasons, counsel was not ineffective for objecting to any charge that would have presented justification to the jury as a response to the jury's request for further instructions. Thus, we cannot say that counsel's representation was constitutionally deficient at the time because he vigorously pursued the defense defendant approved rather than the one defendant rejected outright.

Notably, the misidentification theory had the potential to achieve defendant's acquittal on all charges. In contrast, had counsel successfully pursued a justification defense, this would only have resulted in acquittal on the murder charge—not the assault of Talleyrand, who was shot as he ran away from the shooter. Therefore, counsel's efforts to achieve defendant's stated objective by solely advancing the misidentification defense "w[ere] consistent with strategic decisions of a reasonably competent attorney" (*Benevento*, 91 NY2d at 712 [internal quotation marks omitted]).[2]

To the extent defendant argues that counsel was ineffective because he misinformed him of the consequences of pursuing a misidentification defense, resolution of that claim requires consideration of matters dehors the record and cannot be decided on this appeal (*People v Cass*, 18 NY3d 553, 556

---

2. The parties' interpretations of *People v Petrovich* (87 NY2d 961 [1996]) in support of their respective positions do not require a different outcome or analysis. In *Petrovich* defendant's desire to charge the jury with only second-degree murder—and not manslaughter under EED—was "dispositive of a defendant's fate" (87 NY2d at 963). The Court held that the defendant had not been deprived of his right to counsel when the EED defense was not presented (*id.*). Here too, given the obvious concerns inherent to defendant's competing defense theories, we cannot say that counsel's advancing one theory over the other was in abrogation of his role as advisor and trial strategist such that his representation was less than meaningful.

[2012]). Further, if, as appellate counsel now suggests, defendant was not fully able to appreciate trial counsel's advice, that claim also involves matters not reviewable on this record.[3]

■ Defendant also claims counsel was ineffective for failing to object when the court ordered the courtroom cleared during voir dire to ensure seating for the prospective jurors.[4] This Court has held that "the right to a public trial has long been regarded as a fundamental privilege of the defendant in a criminal prosecution" (*People v Jelke*, 308 NY 56, 61 [1954]). This right extends to jury selection (*Presley v Georgia*, 558 US 209 [2010] [requiring courts to consider alternatives to courtroom closure]; *see also People v Martin*, 16 NY3d 607 [2011] [same], *revg* 71 AD3d 917 [2010]). However, at the time of defendant's trial, lower courts in the state relied on this Court's decision in *People v Colon* (71 NY2d 410 [1988]) to uphold the practice of excluding the public and family members where limited seating required it, without consideration of alternatives (*see People v Varela*, 22 AD3d 264, 265 [1st Dept 2005]; *People v Gibbons*, 18 AD3d 773 [2d Dept 2005]). Given the state of the law at the time, counsel was not ineffective for failing to object to a judicially sanctioned practice (*see Rivera*, 71 NY2d at 708).

Based on the totality of the circumstances at the time of defendant's representation, and upon consideration of the proceedings as a whole, we conclude counsel was not ineffective under our state standard (*Baldi*, 54 NY2d 137; *Stultz*, 2 NY3d 277). Moreover, "[s]ince our state standard . . . offers greater protection than the federal test, we necessarily reject defendant's federal constitutional challenge" (*Wragg*, 26 NY3d

---

**3.** Regardless of where the ultimate decision-making authority lies here, American Bar Association standards, not promulgated at the time of defendant's trial, now inform the profession that "[i]f defense counsel has a good faith doubt regarding the client's competence to make important decisions, counsel should consider seeking an expert evaluation from a mental health professional, within the protection of confidentiality and privilege rules if applicable" (ABA Standards for Criminal Justice, Defense Function, standard 4-5.2 [c] [4th ed 2015]). Defendant has not presented information as to whether counsel had reason to doubt defendant's ability to understand the defense strategy or assist counsel in presenting a defense. Thus, we have no occasion to express an opinion as to whether counsel's actions or inactions comported with any applicable professional norms.

**4.** While the record is unclear, and the parties dispute whether the public was removed, assuming the courtroom was closed, defendant's claim of ineffective assistance is meritless for the reasons we discuss.

at 412 [internal quotation marks omitted], quoting *People v Caban*, 5 NY3d 143, 156 [2005]).

■ Defendant's remaining claim, that the court failed to meaningfully respond to the jury note in violation of CPL 310.30, is unpreserved. This Court recently held that,

> "where counsel has meaningful notice of the content of a jury note and of the trial court's response, or lack thereof, to that note, the court's alleged violation of the meaningful response requirement does not constitute a mode of proceedings error, and counsel is required to preserve any claim of error for appellate review" (*People v Mack*, 27 NY3d 534, 537 [2016], *rearg denied* 28 NY3d 944 [2016]).

Here, counsel objected to the response precisely because the court mentioned justification and self-defense, not, as defendant now argues, on the grounds that the court should have instructed the jury on the defense of justification. Thus, counsel did not preserve the specific objection raised on appeal (*see People v Gray*, 86 NY2d 10, 21-22 [1995]; *People v Crowder*, 24 NY3d 1134, 1136-1137 [2015]; *People v Hanley*, 20 NY3d 601, 605 [2013]).

Accordingly, the Appellate Division order should be affirmed.

Chief Judge DiFIORE and Judges PIGOTT, ABDUS-SALAAM, STEIN, FAHEY and GARCIA concur.

Order affirmed.