This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 28
The People &c.,
          Respondent,
        v.
Leonard Williams,
          Appellant.

          A. Alexander Donn, for appellant.
          Jean M. Joyce, for respondent.

DiFIORE, Chief Judge:

          Defendant maintains that he was deprived of a fair trial by the People's PowerPoint presentation, particularly insofar as it displayed slides that contained annotated images of trial exhibits.  We conclude that, here, where the trial court, in the exercise of its discretion, took prompt corrective action

- 1 -

to ensure that the jury was not being misled and gave strong instructions concerning summation, defendant was not deprived of a fair trial.

Shortly after midnight on December 20, 2009, several men broke into the victim's apartment. The victim, who knew defendant from the neighborhood, recognized defendant as one of the intruders who attacked him. Defendant shot the victim, cut him with a knife and poured bleach over his head. The victim testified at trial that he had been on the telephone with his brother when the men burst into his apartment.

At trial, the People introduced surveillance footage of the street and sidewalk where the victim lived from cameras located on the building neighboring the victim's apartment, as well as still photographs from that footage. The exhibits were authenticated by the custodian of the cameras on the neighboring building. It was snowing heavily at the time of the offense and the video depicts six individuals in hooded clothing walking along the sidewalk through the snow. At one point, the video shows an SUV driving down the block. After the SUV proceeded through the traffic light at the corner, the six individuals can be seen running into what appears to be the victim's building. A short time later, the camera shows the individuals exiting the building and running away.

The victim's brother testified at trial. During his testimony, the prosecutor displayed still photos of the

surveillance video -- in particular, of the SUV that drove down the block near the time of the crime. The victim's brother agreed that he had been driving down the same block on the night of the blizzard around the time of the offense and that he had been speaking with the victim on the phone when he was attacked. The victim's brother further agreed that the truck he drove at that time "looked like" the one in the still shot, but testified that he was unable to definitively identify the vehicle as his.

The victim's brother also testified that, when he was driving down the block, he saw a few people wearing hooded clothing walking on the sidewalk. One of the individuals was short in stature and the victim's brother testified that he thought he recognized that person as defendant -- "[t]he only short person I know." Indeed, he greeted the man, saying "what up," and the man responded with a wave. The victim's brother admitted that he did not see defendant's face, because it was dark outside and there was a blizzard going on, but testified that he "thought it was him."

The trial court, immediately before closing arguments, gave the jury detailed preliminary instructions, telling them that they alone were the finders of fact, that what the lawyers say in summation was "simply argument submitted for your consideration," that nothing the lawyers say in summation was evidence and that the jury's recollection of the evidence controlled, regardless of what the attorneys said.

In summation, the prosecutor displayed a PowerPoint presentation containing slides of images of the trial exhibits, some of which had been annotated through the PowerPoint program with text, circles or arrows. Significantly, the prosecutor displayed slides depicting the still photographs from the surveillance video that he had showed the victim's brother, which had been annotated with captions such as, "[the victim's brother's t]ruck" and "[the victim's brother] sees Defendant," despite the witness's inability to make those definitive identifications in his trial testimony. Defense counsel raised objections at various points, several of which were sustained. In addition, the trial court voiced its own concerns, at one point telling the jury to disregard the prosecutor's annotations to the images of the trial exhibits. The court ultimately curtailed the PowerPoint presentation because of those annotations, stating that it was "not allowing any more . . . superimposed words."

Following summations, defense counsel moved for a mistrial, arguing that there had been improper comment in several areas. Although the court indicated that it was "sympathetic" to certain of defendant's arguments, it denied the mistrial. When the court asked whether defendant "want[ed] anything short of a mistrial," counsel declined. Defendant was convicted of burglary in the first degree, assault in the second degree and criminal possession of a weapon in the second degree. The jury acquitted

him of robbery in the first, second and third degrees.

The Appellate Division affirmed, holding that, to the extent defendant's arguments were preserved, he was not deprived of a fair trial by either the PowerPoint presentation or the prosecutor's summation (123 AD3d 1152 [2d Dept 2014]).  The Court also rejected defendant's ineffective assistance of counsel claim.  A Judge of this Court granted defendant leave to appeal (25 NY3d 1173 [2015]), and we now affirm.

It is well-settled that attorneys are entitled to broad latitude in commenting on pertinent matters of fact in summation, so long as they limit themselves to relevant matters within the four corners of the evidence (see People v Ashwal, 39 NY2d 105, 109 [1976]).  "[T]he District Attorney may not refer to matters not in evidence or call upon the jury to draw conclusions which are not fairly inferrable from the evidence.  Above all, he [or she] should not seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the defendant" (Ashwal, 39 NY2d at 109-110 [citations omitted]).  When determining whether improper statements deprived a defendant of a fair trial, we have considered it to be of "vital significance whether the trial court . . . 'gave standing to the statement of the District Attorney as legitimate argument'" or whether the court took prompt corrective action, such as issuing a curative instruction (People v Broady, 5 NY2d 500, 516 [1959] [citation

omitted]).

There is no inherent problem with the use of a PowerPoint presentation as a visual aid in connection with closing arguments. Indeed, it can be an effective tool. But, the long-standing rules governing the bounds of proper conduct in summation apply equally to a PowerPoint presentation. In other words, if it would be improper to make a particular statement, it would likewise be improper to display it (see People v Anderson, __ NY3d __ [decided today]). If counsel is going to superimpose commentary to images of trial exhibits, the annotations must, without question, accurately represent the trial evidence (see e.g. People v Santiago, 22 NY3d 740, 751 [2014]). Moreover, any type of blatant appeal to the jury's emotions or egregious proclamation of a defendant's guilt would plainly be unacceptable (see e.g. State v Walker, 182 Wash 2d 463, 341 P3d 976 [2015]).

Here, defendant argues that he was deprived of a fair trial by the annotation of images of the trial exhibits to imply that the victim's brother, in his testimony, had positively identified either his truck or defendant from the surveillance video because this misrepresented the witness's testimony. Significantly, the trial court was very attuned to the annotated slides and, in the exercise of its discretion, ultimately stopped the slideshow and instructed the jury to disregard the slides (see People v Galloway, 54 NY2d 396, 399 [1981]). To the extent any slides may have misrepresented the trial evidence, the trial

court instructed the jury on more than one occasion that the attorneys' arguments were not evidence and that the jury was the sole judge of the facts.  Defense counsel also rejected the court's offer of any less drastic relief after the denial of the mistrial motion.  Thus, under these circumstances, defendant was not deprived of a fair trial.

Notably, the actual trial exhibits remained pristine for the jury's examination.  In any particular case, where there is a concern that it will not be clear to the jury that the annotated PowerPoint slides are not in evidence, or a substitute for the actual evidence, a specific jury instruction will serve to emphasize that such representations are merely argument by counsel.

Defendant raises several additional arguments directed to aspects of the prosecutor's summation.  Some of them are preserved and others are raised in the context of an ineffective assistance of counsel claim.  These arguments are without merit. As previously stated, the court's prompt corrective action cured any potential prejudice.  In addition, viewing trial counsel's performance in its totality, meaningful representation was provided (see People v Speaks, 28 NY3d 990, 992 [2015]).  The remarks at issue here were not "so egregious that counsel's failure to object render[ed] his overall representation constitutionally defective" (People v Wragg, 26 NY3d 403, 411 [2015]).

Accordingly, the order of the Appellate Division should be affirmed.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed.  Opinion by Chief Judge DiFiore.  Judges Rivera, Abdus-Salaam, Stein, Fahey, Garcia and Wilson concur.

Decided April 4, 2017