People v Collins (2018 NY Slip Op 08794)





People v Collins


2018 NY Slip Op 08794


Decided on December 21, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 21, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, PERADOTTO, CURRAN, AND TROUTMAN, JJ.


1122 KA 16-01366

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
GLENN COLLINS, JR., DEFENDANT-APPELLANT. (APPEAL NO. 1.) 






LINDA M. CAMPBELL, SYRACUSE, FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (NICOLE K. INTSCHERT OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Joseph E. Fahey, J.), rendered October 26, 2015. The judgment convicted defendant, upon a jury verdict, of manslaughter in the second degree, endangering the welfare of a child (two counts), theft of services and criminal possession of a weapon in the fourth degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, manslaughter in the second degree (Penal Law § 125.15 [1]) and two counts of endangering the welfare of a child (§ 260.10 [1]). The prosecution arose from defendant's conduct in leaving his son and daughter alone for the night in his single-family house while providing electricity thereto by running a gas-powered generator in the basement. The generator emitted carbon monoxide into the house and caused the son's hospitalization for serious injuries and the daughter's death. In appeal No. 2, defendant appeals from a judgment convicting him upon his plea of guilty of scheme to defraud in the first degree (§ 190.65 [1] [b]) arising from allegations that, on two separate occasions in the months following the incident with the children, he agreed to rent the house to a prospective tenant, accepted a security deposit from the prospective tenant, and refused to return the security deposit even though the house was not ready for occupancy as promised when each prospective tenant sought to move in. We affirm in each appeal.
Defendant contends in appeal No. 1 that the evidence is not legally sufficient to support the conviction of manslaughter in the second degree. "A person is guilty of manslaughter in the second degree when," as relevant here, "[h]e recklessly causes the death of another person" (Penal Law § 125.15 [1]). With respect to the culpable mental state, "[a] person acts recklessly with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur . . . The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (§ 15.05 [3]). It is not enough that a person should have known of the substantial and unjustifiable risk; rather, the person "must have actually known of, and consciously disregarded, [that] risk" (People v Lewie, 17 NY3d 348, 357 [2011]).
Inasmuch as defendant, in moving for a trial order of dismissal, contended only that the evidence was legally insufficient to establish that he consciously disregarded a substantial and unjustifiable risk of death, he preserved his contention only with respect to that component of recklessness (see People v Gray, 86 NY2d 10, 19 [1995]; see generally Lewie, 17 NY3d at 362).
In any event, defendant's contention is without merit in all respects because the evidence, viewed in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), is legally sufficient to support the conviction of manslaughter in the second degree (see [*2]generally People v Bleakley, 69 NY2d 490, 495 [1987]). "Often there is no direct evidence of a defendant's mental state and the jury must infer the mens rea circumstantially from the surrounding facts" (People v Smith, 79 NY2d 309, 315 [1992]; see People v Feingold, 7 NY3d 288, 296 [2006]; People v Mitchell, 94 AD3d 1252, 1254 [3d Dept 2012], lv denied 19 NY3d 964 [2012]). Here, the People established that defendant was an experienced HVAC professional who installed heating and air conditioning units and new furnaces, and also completed electrical work for such furnaces. After electrical service to the house was disconnected due to nonpayment, defendant initially placed the gas-powered generator outside in the backyard, which indicated that defendant knew that the generator was intended to be used outdoors. Only after a deputy sheriff responded to a noise complaint from defendant's neighbor a few days later did defendant move the generator from the backyard to the basement of the house. Defendant placed the generator in the corner of the basement with a fan on the floor blowing toward a nearby open window. As established by witness testimony and photographic exhibits, the generator included a warning label on the top near the gas cap expressly warning that "to reduce the risk of injury or death . . . [d]o not operate in any building, vehicle or enclosure" and that "[e]xplosion, fire or carbon monoxide poisoning may result" (internal quotation marks omitted). The jury could reasonably infer from defendant's professional HVAC experience and the warning label, along with his decisions with respect to the initial placement of the generator outside and the subsequent attempted "ventilation" of the generator in the basement, that he actually knew that operating the generator inside in any manner posed a substantial and unjustifiable risk of death by the emission of toxic fumes (see Lewie, 17 NY3d at 357; People v Peters, 126 AD3d 1029, 1031 [3d Dept 2015], lv denied 25 NY3d 991 [2015]).
Defendant contends that the evidence is legally insufficient with respect to manslaughter in the second degree because it did not establish that he had actual knowledge that his attempted "ventilation" was inadequate to remediate the risk associated with operating the generator in the basement. We reject that contention. Not only was defendant's attempted "ventilation" indicative of his knowledge of the subject risk of operating the generator inside in any manner, but the evidence also established that defendant knew that his purported remedial efforts were ineffective. The son testified that, during the period when the generator was running in the basement, it sometimes emitted a noticeable smell of fumes. The son also testified that, a couple days prior to the daughter's death, he was in the basement with defendant while the generator was running and told defendant that he did not feel well. Inasmuch as defendant responded to the son's complaint by directing him to go outside, the jury could reasonably infer that defendant was aware that, despite his attempted "ventilation," toxic emissions from the generator were present in the house and were detrimentally affecting the health of his children when they were inside. The jury was also entitled to infer that defendant actually knew that the attempted "ventilation" of the toxic emissions inside the house from the running generator was ineffective because the son called defendant after defendant left the house on the night in question and prior to the daughter's death to report that he and the daughter were not feeling well, which was consistent with his prior complaint of illness made in defendant's presence.
Contrary to defendant's contention, the evidence is also legally sufficient to establish that he consciously disregarded the substantial and unjustifiable risk of death. Defendant deliberately moved the generator from the backyard to the basement despite having actual knowledge that operating the generator inside in any manner posed a substantial and unjustifiable risk of death by the emission of toxic fumes. He disregarded that risk by leaving the children home alone while the generator was running, and in a house with no functional carbon monoxide detectors, to go on a date with a woman. Moreover, defendant received a call from the son on the night in question reporting that he and the daughter were not feeling well, and the woman reiterated that same complaint to defendant after making a follow-up call to the son. The evidence established that defendant dismissed the children's reported condition, "played it off" as though the son was merely bored and wanted defendant home in order to use defendant's cell phone data, declined to return home, and insisted that he and the woman continue to their destination. Based on the foregoing, we conclude that the evidence is legally sufficient to establish that defendant consciously disregarded the substantial and unjustifiable risk of death, of which he was actually aware, posed by operating the generator inside the house (see Lewie, 17 NY3d at 357; Peters, 126 AD3d at 1031).
Contrary to defendant's further contention, viewing the evidence in light of the elements of the crime of manslaughter in the second degree as charged to the jury (see People v Danielson, [*3]9 NY3d 342, 349 [2007]), we conclude that the verdict on that count is not against the weight of the evidence (see Peters, 126 AD3d at 1031; see generally Bleakley, 69 NY2d at 495). Even assuming, arguendo, that a different verdict would not have been unreasonable, we cannot conclude that the jury failed to give the evidence the weight it should be accorded (see generally Bleakley, 69 NY2d at 495).
Defendant correctly concedes that he failed to preserve for our review his contention in appeal No. 1 that he was deprived of a fair trial by prosecutorial misconduct on summation inasmuch as he did not object to any alleged instances thereof (see People v Reed, 163 AD3d 1446, 1447 [4th Dept 2018], lv denied — NY3d — [2018]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant also contends in appeal No. 1 that he was denied effective assistance of counsel based upon several acts or omissions on the part of defense counsel. We reject defendant's contention that defense counsel was ineffective in failing to object to remarks made by the prosecutor on summation. The prosecutor should have avoided describing as "reckless" additional conduct by defendant relating to the endangering the welfare of a child counts because the only reckless conduct for which defendant was charged related to the operation of the generator inside the house and recklessness is not the relevant mens rea for endangering the welfare of a child (see Penal Law § 260.10 [1]). However, the prosecutor's conflation of the elements of the charges "could not have been interpreted by the jury as an instruction on the law, because [County] Court repeatedly advised the jurors that it would instruct them on the law and subsequently gave correct instructions on the law" (People v Elder, 152 AD3d 787, 788 [2d Dept 2017], lv denied 30 NY3d 979 [2017]). Thus, " [t]o the extent that a portion of the prosecutor's summation could be viewed as containing a misstatement of law, . . . any prejudice was avoided by the court's instructions, which the jury is presumed to have followed' " (People v Harper, 132 AD3d 1230, 1234 [4th Dept 2015], lv denied 27 NY3d 998 [2016]). Further, even assuming, arguendo, that the prosecutor exceeded the broad bounds of permissible rhetorical comment by denigrating the defense and encouraging the jury to do justice for the subject children and society, we conclude that those comments were not so egregious as to deprive defendant of a fair trial (see People v Clark, 138 AD3d 1449, 1451 [4th Dept 2016], lv denied 27 NY3d 1130 [2016]; People v Scott, 60 AD3d 1483, 1484 [4th Dept 2009], lv denied 12 NY3d 859 [2009]). Based on the foregoing, we conclude that defense counsel's failure to object to the remarks at issue did not "render[ ] his overall representation constitutionally defective" (People v Wragg, 26 NY3d 403, 411 [2015]; see People v Williams, 29 NY3d 84, 90 [2017]; People v Cooper, 134 AD3d 1583, 1586 [4th Dept 2015]).
We also reject defendant's contention that defense counsel was ineffective in failing to request the lesser included charge of criminally negligent homicide. Although there was a reasonable view of the evidence that defendant committed criminally negligent homicide but not manslaughter in the second degree (see People v Heide, 84 NY2d 943, 944 [1994]), "it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations" for defense counsel's allegedly deficient conduct (People v Rivera, 71 NY2d 705, 709 [1988]; see People v Benevento, 91 NY2d 708, 712 [1998]), and here defendant "has not demonstrated that the failure to request [such a] charge was other than an acceptable all-or-nothing defense strategy" (People v Rosario, 157 AD3d 988, 994 [3d Dept 2018], lv denied 31 NY3d 1121 [2018] [internal quotation marks omitted]; see People v McFadden, 161 AD3d 1570, 1571 [4th Dept 2018], lv denied 31 NY3d 1150 [2018]). "Indeed, it would have been a reasonable strategy for defense counsel to decide not to request criminally negligent homicide as a lesser included offense because, without that charge, the chances of defendant being acquitted outright [with respect to homicide] were increased" (McFadden, 161 AD3d at 1571). Defendant nonetheless contends that such a strategy was unreasonable under the circumstances of this case because the jury would have found him culpable in some manner given the evidence against him, and the absence of the lesser included charge deprived the jury of the opportunity to compromise, i.e., caused the jury to convict him of manslaughter in the second degree. We reject that contention, however, because the jury could have acquitted him entirely or compromised by convicting him of only the two counts of endangering the welfare of a child (see id.).
Contrary to defendant's contention, defense counsel was not ineffective for failing to move to dismiss the count of criminal impersonation in the second degree "inasmuch as [the court] sua sponte dismissed . . . th[at] count[ ]" (People v Place, 152 AD3d 976, 980 [3d Dept [*4]2017], lv denied 30 NY3d 1063 [2017]). Defendant's remaining contention that defense counsel was unfamiliar with the applicable law is belied by the record.
We reject defendant's further contention that the sentence in appeal No. 1 is unduly harsh and severe.
In view of our determination affirming the judgment in appeal No. 1, we reject defendant's contention that the judgment in appeal No. 2 must be reversed on the ground that he pleaded guilty in appeal No. 2 based on the promise that the sentence in appeal No. 2 would run concurrently with the sentence in appeal No. 1 (see People v Roig, 117 AD3d 1462, 1463 [4th Dept 2014], lv denied 23 NY3d 1042 [2014]; People v Khammonivang, 68 AD3d 1727, 1727-1728 [4th Dept 2009], lv denied 14 NY3d 889 [2010]; cf. People v Fuggazzatto, 62 NY2d 862, 863 [1984]). Finally, even assuming, arguendo, that defendant's waiver of the right to appeal in appeal No. 2 is invalid and thus does not preclude our review of his challenge to the severity of the sentence in that appeal (see People v Pedro, 134 AD3d 1396, 1397 [4th Dept 2015]; People v Caufield, 126 AD3d 1542, 1542 [4th Dept 2015]), we nevertheless conclude that the sentence is not unduly harsh or severe.
Entered: December 21, 2018
Mark W. Bennett
Clerk of the Court